Underdown v. Desha.

Opinion delivered February 16, 1920.

1. APPEAL AND ERROR—HARMLESS ERROR.—The admission of incompetent evidence to establish undisputed facts is harmless error.

2. NAVIGABLE WATERS — CONVEYANCE OF ISLAND — CANCELLATION.— Under Acts 1917, page 1468, section 5, providing that *bona fide* claimants of islands formed in navigable rivers shall have a preferential right for one year after the passage of the act to apply for the survey and purchase of the lands claimed by them, and that in case of conflict between applicants the question of preference shall be determined by the Land Commissioner under such rules and regulations as he may prescribe not in conflict with the act, and that the determination of the commisisoner on such contest, in the absence of fraud or collusion, shall be final, *held* where plaintiffs and defendants each made due application to purchase a certain island in a navigable stream, and the commissioner issued a deed to defendant without determining the conflicting claims of plaintiffs, it was proper for the chancellor to annul such deed and direct the commissioner to conduct the hearing provided by the act.

3. NAVIGABLE WATERS—INCONSISTENT POSITIONS.—Though plaintiffs claimed that an island in a navigable stream was an accretion to their land situated on the main land, there was no inconsistency in their attempting to acquire title under Acts 1917, page 1470, section 5.

4. NAVIGABLE WATERS—ISLAND IN NAVIGABLE STREAM—RIGHT TO PURCHASE.—If General Acts 1919, page 256, repealed Acts 1917, page 1468, providing for the acquisition of title to lands in navigable streams, the rights of an applicant for title to such lands are not affected where the application was filed prior to February 1, 1919; the act preserving the rights of those who filed their applications prior to that date.

Appeal from Independence Chancery Court; *Lyman F. Reeder,* Chancellor; affirmed.

*W. K. Ruddell,* for appellant.

Patents should not be set aside except upon the most convincing evidence. 119 Iowa 6; 97 Am. St. Rep. 279.

It is not possible to divest the title of defendant and allow the commissioner to issue a deed after hearing a contest, as the State was not a party and had parted with its title. No fraud is claimed or shown on part of de-

fendant against the State, and a court of chancery could not vest back the title in the State. 59 Ark. 187; 11 *Id.* 120; 51 *Id.* 390. It is not claimed that defendant committed any fraud but that Commissioner Owens made a mistake in issuing the deed before a contest was heard, and that this was constructive fraud on plaintiffs because he failed to comply with Act No. 282, but, even admitting constructive fraud on part of the commissioner, as it was only a mistake and fraud is never presumed, but must be proven and relief is never granted where the rights of innocent parties may be jeopardized. 12 R. C. L. 399; 10 *Id.* 317. No act of fraud was committed by Underdown against the right of plaintiffs. They knew all the time he claimed the land belonged to the State because it was an island. He practiced no fraud, concealment or artifice. Plaintiffs' own concealment was the cause of their injury, if any. 36 L. R. A. (N. S.) 149, 154. There was no evidence of fraud, which must be proved. 10 R. C. L. 294; 97 Am. St. Rep. 276. Admissions of vendor are not admissible after making conveyance against his vendee. 37 Ark. 145; 108 *Id.* 415; 11 *Id.* 378; 38 *Id.* 419; 3 Crawford's New Digest, p. 2299; 42 Am. Dec. 632, note.

Underdown committed no act to unduly influence the commissioner to issue him a deed, and where a commissioner by oversight issues a deed it would not be fraud, but only mistake. Equity has no power to revise, control or correct the action of public, political or executive officers or bodies at the suit of private persons. 17 Am. St. Rep. 118-121; 52 *Id.* 353-4.

Plaintiffs had no vested rights as settlers on State lands and can not complain of any disposition made by the State. 16 Ark. 414-434; 16 *Id.* 440-458. Donations are only a matter of grace on part of the State. 40 Ark. 244-246; 47 *Id.* 199, 202; 37 *Id.* 132; 31 *Id.* 528.

Occupation and improvement of public land with a view of pre-emption does not confer any right upon the settler against the United States or its right to dispose of the land to other persons. 132 U. S. 35. This would ap-

ply to our Legislature. The Land Commissioner had already issued a deed for this island, and mandamus would not lie to compel him to act again. While equity relieves against mistakes, yet not mistakes of fact, or blind folly, or negligence. 80 Am. Dec. 401-2. See also 28 L. R. A. (N. S.) 785, 884. Plaintiffs knew that Underdown was claiming the land as an island, yet when they wrote to the commissioner they did not ask if Underdown had made any application. Underdown cannot be placed *in statu quo* if his deed is canceled. 53 Ark. 16; 15 *Id.* 286; 25 *Id.* 196. Underdown was a *bona fide* purchaser without notice, and a mistake of the commissioner could not affect his rights. 129 Ark. 305.

Plaintiffs are estopped, as they led Underdown to believe that they were depending on their own title as an accretion to the mainland. One can not take inconsistent positions to someone else's damage. 22 Ark. 445; 85 *Id.* 163; 2 Crawford's New Digest, 1935.

The demurrer to the complaint should have been sustained, as it stated no cause of action and showed no grounds of equitable relief. 57 Am. Dec. 365; 79 *Id.* 667; 6 Am. St. Rep. 601; 53 Ark. 16; 15 *Id.* 286.

*Ernest Neill* and *Chas. F. Cole,* for appellee.

The proof shows that appellees honestly and in good faith believed that these tracts belonged to them by the law of accretion, they being riparian owners, and they still so believe, and have spent money in improving them.

Appellant's application is not in evidence, nor any copy. This is significant, as his title depends upon a deed from the Land Commissioner under act No. 282, Acts 1917. Outside this act the commissioner had no power or authority to execute the deed. See section 5 of said act. There was a legal and equitable obligation on him to disclose the real facts to the commissioner, and if he failed this constituted fraud. 12 R. C. L., p. 307.

Under the facts of this case appellees had a clear right to ask aid of equity. 1 Pomeroy on Eq., § 423; 30 Ark. 123; 105 *Id.* 587-592. The commissioner had no au-

thority to convey the land except under the terms of act No. 282, and appellant failed to comply with the terms of that, and the lower court so found.

By long possession and improvement of these lands under *bona fide* claim of ownership they have acquired substantial rights recognized by the legislators and which they intended to protect by act No. 282, and that the rights of appellees amounted to a vested and exclusive right to purchase the lands at any time within one year from the passage of said act and the deed to Underwood was wrongfully issued, and chancery alone had the power to correct the wrong. 44 Ark. 452; 49 *Id.* 87; 76 *Id.* 525-7. As to the remedy, see also 32 Cyc. 1050 *et seq.*

The letters of the commissioner were properly admitted in evidence, as no objection was made. 94 Ark. 254, 261.

Act 344 did not repeal act 282 as to future sale of lands.

SMITH, J. Appellees filed a complaint asking the cancellation of a deed executed to appellant on April 3, 1918, by the State Land Commissioner. The complaint imputes no bad faith to the commissioner but alleges that under the circumstances the deed was a fraud upon their rights.

The deed was executed under the authority of act 282 of Acts 1917 (Acts 1917, page 1468), entitled ''An act to provide for the sale and disposition of islands formed or which may form in navigable rivers or streams of the State which belong to the State of Arkansas, and for other purposes,'' and the land sued for was conveyed to appellant by the State Land Commissioner as an island which had formed in White River.

Section 5 of this act provides that all *bona fide* claimants of these islands shall have a preferential right of one year after the passage of the act to apply for the survey and purchase of lands claimed by them, and that in case of conflict between applicants the question of preference shall be determined by the commissioner under such

rules and regulations as he may prescribe not in conflict with the provisions of the act, and that the determination of the commissioner on such contest, in the, absence of fraud or collusion, shall be final. There was a prayer in the complaint that appellant's deed be canceled to the end that the commissioner might conduct the hearing provided for by the act on the relative rights of the respective claimants to the commissioner's deed.

The court granted the relief prayed by canceling appellant's deed and referred the cause to the Land Commissioner for his action, and this appeal is from that decree.

It is contended by appellees that they own the land in controversy as an accretion, but that they applied for a deed under this act 282 to prevent a controversy arising over their title. There is a conflict in the testimony as to whether the land was an accretion, or an island, but it was agreed that appellees were the owners of the mainland adjacent to these parcels of land and that one of the appellees had paid the taxes on the land claimed by him for the years 1915, 1916 and 1917, by adding ten and one-half acres to the area of his surveyed land, and that the other appellees paid the taxes on the remainder thereof for 1918 in the year 1919.

Appellant had litigation with one of the appellees over the crop grown in 1917 and lost his suit, it being there successfully shown that the land was an accretion, and because of that fact it is now insisted that it is inconsistent for the appellees to attempt to buy the lands as an island belonging to the State.

At the time of the filing of the respective applications to purchase the land with the State Land Commissioner all the parties hereto had possession of some portion of the land. One of appellees had possession of the land which he desired to purchase through appellant's father as a tenant, and the other appellees also had possession of a portion of the land by tenant; but appellant himself had never been any one's tenant, although he had no

claim to the land except such as grew out of his occupancy of it and his application to buy it.

At the trial in the court below there was offered in evidence certain correspondence between appellees and the Land Commissioner, who had been made a party, from which it appeared that appellees filed their application to purchase the land on February 15, 1918, and that that of appellant was filed on February 20, 1918. The commissioner did not attempt to pass on these conflicting applications. Indeed, his letter stated that he did not know there was a conflict, as he assumed applications were being made to purchase three separate islands. The act provided that the commissioner should appoint a surveyor to make field notes and a plat conforming to the rules and regulations as laid down by the Manual of Surveying for the Survey of Public Lands used in the General Land Office of the United States, and the commissioner appointed the same surveyor to make the survey for each of the applicants. Appellant proved more diligent than the other applicants and got in touch with the surveyor named, and upon the survey then made obtained the deed here sought to be canceled. Objection is made to the competency of these letters. But it appears that an attorney for appellees testified as a witness, and stated that, acting for appellees, he had, within the year, filed with the Land Commissioner the application of appellees to purchase the islands. So that, if the Land Commissioner's testimony is disregarded as incompetent, it still appears from competent testimony that appellees applied to purchase the land within a year from the passage of the act, and that fact is undisputed.

It is not insisted that a finding be made that there was fraud or collusion on the part of the commissioner in issuing the deed; and we think the testimony does not show that such was the case. The finding of the commissioner, which is made final in the absence of fraud or collusion by the provisions of the act, relates to a contest between conflicting applicants to buy the same land; and there has been no such decision between these appli-

cants. Indeed, the decree of the court below provides for this hearing before the commissioner, and if he should decide that appellees are *bona fide* claimants to the land, as the record before us appears to show, it will then be his duty to issue his deed to appellees for the reason that the act gives such claimants a preferential right to buy for a period of one year after the passage of the act. And this is true, notwithstanding the fact that the first survey made was based upon appellant's application, because appellees—if the Land Commissioner find them to be *bona fide* claimants—have the preferential right to buy the land for a period of one year.

We think there is no inconsistency in appellees' position which prevents their buying the land. It is true that in prior litigation with appellant they prevailed in a lawsuit over a crop on the theory that they owned the land in controversy here as an accretion. But it is not undisputed that it is an accretion, and appellees had the right to perfect their title to the land by buying it as an island, it being explained by them that this course was pursued to prevent some one else buying the land as an island and thereby making it unnecessary to litigate the question whether the land was an accretion with some one, who held a deed from the State. The question whether new land was formed as an island or as an accretion to the main shore is one of fact, and is quite a common one, and we think it was the legislative purpose to give riparian owners, situated like appellees were, the preferential right to buy for the period of a year.

It is finally insisted that the act giving appellees the preferential right has been repealed by act 344 of the General Acts of 1919, page 256. It is unnecessary here to decide what effect the passage of the act of 1919 had upon the act of 1917, as it is provided in section 1 of the act of 1919, "That nothing in this bill shall affect the sale of any State lands where written application was filed with the Commissioner of State Lands prior to February 1, 1919." Appellees' application was made prior to Feb-

ruary 1, 1919, and the Land Commissioner's deed would, no doubt, have been issued thereon but for the commissioner's mistake of fact in assuming that the parties desired to purchase three different islands.

Decree affirmed.